UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID A. SWIFT,

    Petitioner,

    v.      CAUSE NO. 3:18-CV-867-RLM-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

David A. Swift, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (IYC 18-05-0039) in which a disciplinary hearing officer found him guilty of attempting to traffic in contravention of Indiana Department of Correction offense A-111/113. ECF 2 at 1. He was sanctioned with the loss of 180 days earned credit time and a one-step demotion in credit class.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-573 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. Superintendent, Mass Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Mr. Swift raises several arguments in his petition, including an argument that he is not guilty of the charged offense. In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Supt. v. Hill, 472 U.S. at 455-456. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

The conduct report charged Mr. Swift as follows:

> On 4/20/2018 I Investigator S. Puckett was advised to review the incident that took place on 4/20/18. The incident was tobacco and K/2 Spice being located on the perimeter and in the Maintenance shop trash can. Offender Swift David 97971 was caught rummaging [through] the trash can and after searching such trash can over seven [ounces] of tobacco where [sic] discovered. This tobacco packaging matched the packaging of the other bags found on the perimeter earlier in the morning. In his Jpay letters, Swift was professing his innocence to whomever he writes. In his emails and phone Swift talked about standing by the garbage can and using the microwave near the garbage

2

> can[.] Swift did not talk to his family and friends, in phone calls or emails, about him being in the trash or digging in the trash. Yet, there is an incoming JPay from a Paige Helton who stated, "I mean they have no way of holding you for that it's not like they have proof of you digging in the trash." On April 19, 2018 a phone call was made between Swift and a Mark Cornelison (former offender that has been at this facility 119661, who is no longer on paper). Swift [s]tated "[I'm hungry]. I'm tired of not having anything. Mark: I'm going to get something to you soon." This Mark Cornelison is on seven different offenders' phone lists. Swift professed his [innocence] when he was [interviewed] by me on May 1, 2018 and stated he was warming up his meat. Chow was done for the day[.] [T]his was confirmed by on duty staff.

ECF 13-1. Mr. Swift was charged with violating IDOC A-111/113. Specifically, IDOC offense A-111 prohibits inmates from "[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. *See* https://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. IDOC policy A-113 prohibits inmates from "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5 with anyone who is not an offender residing in the same facility." *Id.*

At screening, Mr. Swift asked for witness statements from three individuals: Officer Fish, Officer Evans, and Offender Michael Wise. Officer Fish was no longer employed at the institution, and couldn't be reached to give a statement. Offender Wise provided a statement indicating that he didn't recall if Mr. Swift was digging through the trash. Officer Evans provided a statement regarding when chow ended on the day of the incident. He indicated that chow started at 10:30 a.m. and ended when maintenance got back from lunch at 11:30 a.m. Officer Evans also provided this statement:

3

> On 4/20/18 I Officer J. Evans was watching offenders during lunch. Offender Swift David Doc#197971 went to chow at 10:30am. Sacks were received from gate one around approximately 10:35am, and the offenders that were still outside the gate started eating. At 11 o'clock am lunch was all eaten and when count cleared I sent the warehouse workers back to work, and I watched the remaining offenders while Maintenance went to lunch. Offender [S]wift started acting unusual and started asking a lot of questions about what was found in the field by the other 2 offenders, and he started uncontrollably [shaking] his legs and becoming fidgety not knowing when he was going back and what was going on. He asked numerous times when he could go back and what was going to happen to him and the others when they got back inside. Maintenance arrived back from lunch at 11:30am and as I was talking to maintenance employee Sam Ewan about his behavior, I saw the offender get up and walk toward the trash can. Not knowing or expecting anything, I turned my back for a few second to talk to Sam in private and offender went to sit back down. At this time Sam went to look in the trash and pull the bags that were collected from the field and there was 2 more full size baggies of what appeared to be tobacco. I called shift officer and explained to Lt. Meyers the situation and she stated to cuff him, take him to HSU, and then to RSH pending an investigation. Upon doing this the offender asked numerous times why he was the only one getting locked up. My response to him was "how do you know you are the only one"? And then he just kept quiet.

ECF 13-7 at 2.

At the hearing, Mr. Swift said he worked at motorpool, and an inmate found a package outside and and turned it in. He said he didn't know anything about the packages that were found in the trash. The hearing officer considered staff reports, Mr. Swift's statement, and witness statements in concluding that Mr. Swift was guilty. The hearing officer had sufficient evidence to find Mr. Swift guilty of these offenses. Both the Conduct Report and staff reports contained in the sealed Report of Investigation contain sufficient information to find Mr. Swift guilty. Mr. Swift's behavior, which struck Officer Evans as unusual, his trip to the area near the trash can, and his phone call with a former offender constitute

4

some evidence of Mr. Swift's guilt. The evidence isn't overwhelming, but it's enough to support a finding of guilt in the context of a prison disciplinary offense.

While Mr. Swift denied any involvement in the incident, the hearing officer wasn't required to credit his version of events. McPherson v. McBride, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence."). The hearing officer's finding Mr. Swift guilty was neither arbitrary nor unreasonable in light of these facts.

Mr. Swift also claims that he was denied witness statements. Mr. Swift had a right to request evidence in his defense, see Wolff v. McDonnell, 418 U.S. at 566, but he didn't necessarily have a right to personally review that evidence. White v. Ind. Parole Bd., 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . "). Mr. Swift received two of the three witness statements he asked for, and he isn't arguing in his petition that his due process rights were violated by the failure to provide a statement from Officer Fish. Rather, he complains that he did not get to view a statement from the witness that saw him digging in the trash receptacle. Statements from witnesses who saw him digging in the trash are not exculpatory. Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." Meeks v. McBride, 81 F.3d 717, 720 (7th Cir. 1996). Even if

5

Mr. Swift had requested this statement, denying the request would not violate his due process rights because the evidence was not exculpatory. White v. Parole Board, 266 F.3d at 767. This isn't a basis for granting habeas corpus relief.

Mr. Swift believes his rights were violated because he wasn't given a confiscation slip for any of the contraband that was found. Failure to provide Mr. Swift with a confiscation slip does not violate due process even if it violates IDOC policy. *See* Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief"); Keller v. Donahue, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). This isn't a basis for granting habeas relief.

Finally, Mr. Swift claims that his due process rights were violated because the hearing officer wasn't impartial. Mr. Swift asserts that internal affairs wrote him up because he couldn't give them the information they wanted, and that then, the hearing officer said she wouldn't find contrary to internal affairs. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* Due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.* Mr. Swift hasn't demonstrated that the hearing officer was directly

6

or otherwise substantially involved in the factual events underlying the disciplinary charges or the investigation of the incident. *Id.* Because he hasn't rebutted the presumption that the hearing officer was acting with honesty and integrity, this ground doesn't identify a basis for habeas corpus relief.

Mr. Swift doesn't need a certificate of appealability to appeal this order because he is challenging a prison disciplinary proceeding. *See* <u>Evans v. Circuit Court</u>, 569 F.3d 665, 666 (7th Cir. 2009). But he can't proceed in forma pauperis on appeal because an appeal in this case couldn't be taken in good faith. 28 U.S.C. § 1915(a)(3).

For these reasons, David A. Swift's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close the case.

SO ORDERED on September 4, 2020

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
